TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
MARINA A. TORRES (Cal. Bar No. 259576)
Assistant United States Attorney
International Narcotics, Money Laundering,
  and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-8231
     E-mail:    marina.torres@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-448-MWF-3 |
|---|---|
| Plaintiff, | GOVERNMENT'S SENTENCING POSITION FOR LESLIE CHARLES BONNER |
| v. | |
| LESLIE CHARLES BONNER, | Sentencing Date: 5/19/2021<br>Sentencing Time: 2:00 p.m. |
| Defendant. | |

   Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Marina A. Torres, hereby files its sentencing position for defendant Leslie Charles Bonner.

   This sentencing position is based upon the attached memorandum

//
//
//
//
//

of points and authorities, the files and records in this case, the Presentence Report, the attached exhibit(s), and such further evidence and argument as the Court may permit.  The government reserves the right to supplement.

Dated: May 5, 2021     Respectfully submitted,

TRACY L. WILKISON
Acting United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

/s/ *Marina A. Torres*
MARINA A. TORRES
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.   INTRODUCTION**

On January 26, 2021, the defendant in this case, Leslie Charles Bonner ("defendant"), pleaded guilty to one count of possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A)(ii)(II), pursuant to a plea agreement. (Presentence Report ("PSR"), Dkt. 156, ¶¶ 2-3; Plea Agreement, Dkt. 142.)

The United States Probation Office ("USPO") filed a PSR which determined defendant's Criminal History Score to be zero, falling in Criminal History Category I. (PSR ¶ 52.) The government agrees that the PSR correctly calculates defendant's Criminal History Category. The PSR further found the base offense level to be 31, applied a two-level safety-valve reduction, applied a further two-level reduction for defendant's minor role in the offense, and another three-level reduction for acceptance of responsibility. (Id. ¶¶ 35-37, 39-46.) With defendant's Criminal History Category and a total offense level of 24, the PSR calculated a Guidelines sentencing range of 51 to 63 months' imprisonment. (Id. ¶ 88.) The PSR also determined that the statutorily required minimum term of imprisonment is ten years (id. ¶ 87), which is greater than the maximum of the applicable guideline range; however, the guideline range applies, as the defendant meets all of the safety-valve criteria. (Id.) In its Disclosed Recommendation Letter, the PSO recommended a downward variance and a sentence of 46 months' imprisonment. (Dkt. 155.)

For the reasons set forth below, the government does not object to the PSR's findings. Per the parties' written plea agreement, the government recommends an additional two-level downward variance, which results in a Guidelines sentencing range of 41 to 51 months'

imprisonment. (Plea Agreement ¶ 3(e), Dkt. 142.) The government otherwise agrees with the PSR. As a result, the government recommends defendant receive a sentence of 41 months' imprisonment, to be followed by two years of supervised release under the terms and conditions recommended by the USPO, and be ordered to pay a $100 special assessment. The government submits that such a sentence would be sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to adequately deter defendant from committing further offenses, and to avoid unwarranted sentencing disparities with other defendants in similar circumstances.

**II.  STATEMENT OF FACTS**

   **A.  Drug Conspiracy**

Beginning on a date unknown, and continuing to on or about July 25, 2019, co-defendant David Eccleston (Eccleston) coordinated shipments of cocaine from Los Angeles, California, to co-defendant Michael McNeal (McNeal) in Philadelphia, Pennsylvania. Co-defendant Eccleston would obtain cocaine from unindicted coconspirators and co-defendant McNeal would travel from Philadelphia to Los Angeles to meet at a business unit in Rancho Cucamonga, California, that was referred to as the "Factory," from where they would ship cocaine to Philadelphia. All defendants would meet at the Factory to prepare the cocaine for shipment. Defendant and co-defendant Nembhard would drive delivery trucks to the Factory to pick up cocaine for shipment and deliver cash proceeds, while co-defendants Eccleston and Malcolm would deliver the packages containing cocaine to co-defendant Luis Lopez (Lopez) at the shipping business in Los Angeles where Lopez worked. Co-defendants Eccleston, Malcolm, and Lopez would then ship

the packages of cocaine from the shipping business in Los Angeles to co-defendant McNeal in Philadelphia.  Defendant and co-defendants Eccleston, Nembhard, and Malcolm would receive cash proceeds of narcotic sales from co-defendant McNeal.  In total, defendant and his co-conspirators distributed at least 131 kilograms of a mixture and substance containing a detectable amount of cocaine.

**B.   Defendant's Involvement in the Drug Conspiracy**

On January 28, 2019, using coded language in a telephone conversation, co-defendant Eccleston and defendant discussed shipping approximately 8 kilograms of cocaine that defendant had received.

On February 19, 2019, co-defendant Eccleston asked defendant to rent a delivery van, which defendant then drove to a business unit in San Bernardino County.  This unit was then used by defendant and his co-conspirators to deliver narcotics proceeds from co-defendant McNeal.

On March 4, 2019, co-defendant Eccleston notified defendant that approximately 38 kilograms of cocaine that he had delivered to co-defendant Lopez for shipping had been seized by law enforcement. Defendant and co-defendant Eccleston arranged to meet in person.

**III. THE PRESENTENCE REPORT AND GUIDELINES CALCULATIONS**

In the PSR, the USPO determined that defendant's base offense level was 31 in accordance with U.S.S.G. § 2D1.1(a)(5)(B)(ii). (PSR ¶ 36.)  The USPO found that defendant met all five criteria of the safety-valve provisions, pursuant to U.S.S.G. § 2D1.1(b)(18), and applied a two-level reduction.  (Id. at ¶ 37.)  The USPO applied a further two-level adjustment downward for defendant's minor role in the offense.  (Id. at ¶ 42.)  The USPO did recommend that defendant

3

receive a three-level reduction for acceptance of responsibility.[1] (Id. at ¶ 46.) The USPO found that defendant had zero criminal history points, which places him in a Criminal History Category I. (PSR ¶ 52.) Accordingly, the USPO found the total offense level to be 24. (Id. ¶ 47.) Based on the foregoing calculations, the USPO determined that the applicable guidelines range is 51 to 63 months' imprisonment for defendant's conviction, a two- to five-year period of supervised release, a fine range of $20,000 to $10,000,000, and a mandatory special assessment of $100. (PSR ¶¶ 88-99.) The USPO also noted that the parties' written plea agreement included an additional two-level downward variance. (Id. ¶ 89; Plea Agreement ¶ 3(e), Dkt. 142.)

The government concurs with the PSR's determinations and factual findings.

**IV. A SENTENCE OF 41 MONTHS' IMPRISONMENT IS REASONABLE AND APPROPRIATE**

The government believes that defendant is safety-valve eligible under both U.S.S.G. § 2D1.1(b)(17) and 18 U.S.C. § 3553(f). After applying all variances and adjustments, the government believes defendant's total offense level should be 22[2] and his criminal history a Category I. As a result, the government recommends a sentence consisting of 41 months' imprisonment, followed by a two-year term of supervised release.

---

[1] The government hereby moves for a one-level decrease pursuant to U.S.S.G. § 3E1.1(b) and the plea agreement.

[2] The parties have, in the plea agreement, stipulated to a base offense level of 31. With a three-point reduction for acceptance of responsibility, a two-level reduction for defendant's minor role, a two-level safety-valve reduction, and a further COVID-related two level downward variance, the government believes defendant's total offense level to be 22.

4

**A.   Safety-Valve Eligibility**

The USPO determined that: (1) defendant had zero criminal history points; (2) the offense did not result in death or serious bodily injury to any person; and (3) the defendant was not an organizer, leader, manager, or supervisor of others in the offense nor was she engaged in a criminal enterprise.  (PSR ¶¶ 35-37.)  As discussed above, the government believes that the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon in connection with the drug offense.

The fifth criteria for safety-valve eligibility, under U.S.S.G. § 5C1.2(a)(5) and 18 U.S.C. § 3553(f)(5), requires that the defendant, no later than the time of the sentencing hearing, truthfully provide to the government all information and evidence that defendant has concerning her offense.  The Ninth Circuit has interpreted this to mean that defendant must provide "truthful" and "complete" information, but the information provided need not assist in other investigations or prosecutions. United States v. Mejia-Pimental, 477 F.3d 1100, 1105 (9th Cir. 2007).

Defendant has cooperated with law enforcement.  The government has no reason to believe that defendant was not truthful and complete in this cooperation, and thus the government believes he has met the fifth and final criteria for safety-valve eligibility.

**B.   Nature and Circumstances of the Offense, § 3553(a)(1)**

The nature and circumstances of the offenses are serious. Defendant, together with his co-defendants, knowingly and intentionally conspired to distribute and possess with the intent to distribute at least 131 kilograms of cocaine.  (PSR ¶ 21.)

5

Defendant's actions thus perpetuated the illegal and dangerous drug trade.

### C. History and Characteristics of Defendant, § 3553(a)(1)

Defendant has no prior convictions, and thus has no criminal history points. (Id. at ¶ 52.) Defendant's complete lack of any criminal history weighs in favor of lenity. Likewise, defendant's acceptance of responsibility is a significant mitigating factor in determining the appropriate sentence. Indeed, defendant admitted his participation in the drug sales in the factual basis of his plea agreement. (Plea Agreement ¶ 12, Dkt. 142.) Defendant's role in the offense was minor (if not minimal)[3], and he is certainly the least culpable member in the conspiracy. Defendant was clearly working at the direction of his co-defendant Eccleston, he had no decision-making authority, and there is no suggestion that defendant was aware of the full scope of co-defendant Eccleston's drug trafficking activities. (PSR ¶ 22-24.) Moreover, defendant's base offense starts off at a high level of 34[4] because of the sheer amount of cocaine – 131 kilograms – involved in the entire conspiracy; however, defendant himself appears to have been involved with only eight kilograms of cocaine. Were the charges limited only to this

---

[3] In his sentencing position, defendant argues that he qualifies for a four-level minimal participant adjustment. The government takes no position. (Dkt. 158.)

[4] Defendant and his coconspirators are responsible for distributing a total of 131 kilograms of cocaine. Pursuant to USSG §2D1.1(c)(3), if the offense involved at least 50 kilograms but less than 150 kilograms of cocaine, the base offense level is 34. Pursuant to USSG § 2D1.1(a)(5)(B)(ii), however, if the defendant receives an adjustment under §3B1.2 for mitigating role and the base offense level under subsection (c) is 34, a three-level decrease is warranted. Because the defendant receives a two-level reduction for minor role under §3B1.2, the base offense level is 31.

6

quantity, defendant would be starting off at a base offense level of 30[5] (before application of all downward departures and variances).

Additional mitigating factors include defendant's long and consistent work history, which shows that defendant has maintained gainful employment for the entirety of his adult life as a self-employed auto mechanic and house painter (id. ¶ 79). Defendant's long history of employment has allowed him to support his family. Commendably, defendant has no history of drug or alcohol abuse. (Id. ¶¶ 74-75.) Defendant has been on release pending sentencing in this case since July 2019 (Dkt. 31) and has had perfect compliance while on release. Various family members have also submitted several letters in support of defendant's good character and strong family support, and argue that his conduct in this drug conspiracy was an aberration. (Dkt. 158 (attachments).) Finally, defendant's age (he will be 56 at the time of sentencing) is an additional fact that should be considered a mitigating factor. (Id.)

**D. Need for Deterrence and to Protect the Public Further from Defendant, § 3553(a)(2)**

The government believes its recommended sentence will appropriately promote respect for the law, protect the community, and deter defendant and others who would seek to imitate his conduct. As discussed above, defendant's conduct in this case posed a threat to the safety to members of his community. In light of defendant's criminal conduct in this case, the government submits that a 41-month

---

[5] Under this scenario, after applying the two-level safety-valve reduction, the two-level minor role reduction, the three-level reduction for acceptance of responsibility, and the additional COVID-related two-level downward variance pursuant to the plea agreement, defendant's total offense level would be 21, and his guideline range would be 37-46 months' imprisonment.

7

term of imprisonment and a two-year term of supervised release is necessary to protect the public.  The recommended sentence should serve as a specific deterrent to defendant; given his lack of criminal history, it would be his first ever period of incarceration.

### E. Need for the Sentence to Avoid Unwarranted Disparities, § 3553(a)(6)

Section 3553(a)(6) requires the Court to minimize sentencing disparities among similarly-situated defendants.  One way of doing so is to correctly calculate the Guidelines range.  See United States v. Treadwell, 593 F.3d 990, 1011 (9th Cir. 2010) ("Because the [g]uidelines range was correctly calculated, the district court was entitled to rely on the [g]uidelines range in determining that there was no 'unwarranted disparity' . . . ."); Gall v. United States, 552 U.S. 38, 54 (2007) ("[A]voidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the [g]uidelines ranges.").

Here, the government believes defendant's Guidelines range will be correctly calculated.  Under that range, other defendants "with similar records who have been found guilty of similar conduct" as defendant can expect to receive a custody sentence of between 41 and 51 months' imprisonment.  As such, the government submits that its recommended sentence of 41 months' imprisonment (the low end of the Guidelines range) and two years of supervised release (at the low end of the range) will avoid unwarranted sentencing disparities with similarly-situated defendants who have committed similar crimes.

### F. The Recommended Supervised Release Ranges, Fine, and Special Assessments Are Appropriate

There is no mandatory minimum term of supervised release

8

required in this case, as the government agrees that defendant meets the safety-valve criteria.  21 U.S.C. § 841(b)(1)(A).  Given the seriousness of the instant offenses and defendant's lack of criminal history and characteristics (notably, the aberrant nature of this offense in light of defendant's history employment and lack of drug and alcohol use), the imposition of a two-year term of supervised release would provide a needed additional incentive for defendant to refrain from committing additional crimes once he is released.

Based on defendant's reported financial condition, the USPO has determined that defendant does not have the ability to pay a fine.  (PSR ¶¶ 85-86.)  The government concurs with the USPO's assessment of defendant's inability to pay a fine, and recommends that defendant not be ordered to pay a fine.  The UPSO reports that there is no identifiable victim in this case.  (Id. ¶ 99.)  The government concurs and is not aware of any restitution owed in this matter.

**V.     CONCLUSION**

For the foregoing reasons, the government submits that its recommended sentence is sufficient, but not greater than necessary, given the nature and circumstances of the offense and defendant's history and characteristics.  The recommended sentence also reflects the need to punish defendant, promote respect for the law, deter future crimes, and avoid unwarranted sentencing disparities.  See generally 18 U.S.C. § 3553(a).  Accordingly, the government respectfully requests that the Court sentence defendant to a total of 41 months' imprisonment, with two years of supervised release to follow with conditions recommended by the USPO, and order defendant to pay a $100 special assessment.